IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

GREGORY LAWON DEBARDELABEN, )
AIS #266562,                 )
                             )
        Petitioner,          )
                             )
    v.                       )        CASE NO. 1:12-CV-145-WHA
                             )             [WO]
                             )
CHERYL PRICE, et al.,        )
                             )
        Respondents.         )

# RECOMMENDATION OF THE MAGISTRATE JUDGE[1]

## I.  INTRODUCTION AND PROCEDURAL HISTORY

This civil action is before the court on a 28 U.S.C. § 2254 petition for writ of habeas

corpus relief filed by Gregory Lawon Debardelaben ["Debardelaben"], a state inmate, on

February 8, 2012.[2]  In this petition, Debardelaben challenges convictions and sentences

imposed upon him by the Circuit Court of Houston County, Alabama for two counts of first

degree robbery.[3]  On June 24, 2009, the trial court conducted a sentencing hearing.  At the

---

[1]All exhibit page numbers referenced herein are those assigned by this court in the docketing process.

[2]The law is well settled that a pro se inmate's petition is deemed filed the date it is delivered to prison officials for mailing.  *Houston v. Lack,* 487 U.S. 266, 271-272 (1988); *Adams v. United States*, 173 F.3d 1339, 1340-41 (11th Cir. 1999); *Garvey v. Vaughn*, 993 F.2d 776, 780 (11th Cir. 1993).  The petition indicates that Debardelaben submitted the petition for mailing on February 8, 2012.  *Petition for Writ of Habeas Corpus Relief - Doc. No. 1* at 9.  In light of the foregoing and for purposes of the proceedings herein, the court considers February 8, 2012,  as the date of filing.

[3]On May 7, 2008, Debardelaben was arrested on two charges of first degree robbery regarding offenses committed against Family Dollar and Big Lots.  These offenses occurred on May 6, 2008, with approximately fifteen minutes

conclusion of this hearing, the court sentenced Debardelaben as a habitual offender to life without parole on each of the robbery convictions.  The trial court used two certified copies of prior federal convictions for armed bank robbery and a certified/exemplified copy of a conviction imposed by the State of Colorado for distribution of a controlled substance as the basis for sentence enhancement.  *Respondents' Exhibit A (Part 4) - Doc. No. 17-4* at 111-112.

At trial, the State presented photographs, including photographs of the currency taken during the robberies and the vehicle used by Debardelaben, submitted a video

---

separating the two crimes.  On July 17, 2008, a duly empaneled grand jury for Houston County, Alabama issued two separate indictments against Debardelaben charging him with first degree robbery arising from these offenses. *Respondents' Exhibit A (Part I) - Doc. No. 17-1* at 8-9, 10-11.  Specifically, the Grand Jury charged that Debardelaben "did in the course of committing a theft, or attempting to commit a theft of UNITED STATES CURRENCY, the property of FAMILY DOLLAR, use force against the person of TANISHA RODGERS, with intent to overcome HER physical resistance or physical power of resistance, or threaten the imminent use of force against the person of TANISHA RODGERS, with intent to compel acquiescence to the taking of or escaping with the property, while ... DEBARDELABEN was armed with a deadly weapon or dangerous instrument, to-wit: A HANDGUN, in violation of Section 13A-8-41 of the Code of Alabama...."  *Id.* at 8.  The second indictment charged that Debardelaben "did in the course of committing a theft, or attempting to commit a theft of UNITED STATES CURRENCY, the property of BIG LOTS, use force against the person of ANGELA JACKSON, with intent to overcome HER physical resistance or physical power of resistance, or threaten the imminent use of force against the person of ANGELA JACKSON, with intent to compel acquiescence to the taking of or escaping with the property, while ... DEBARDELABEN was armed with a deadly weapon or dangerous instrument, to-wit: A HANDGUN, in violation of Section 13A-8-41 of the Code of Alabama...."  *Id.* at 11.  The indictments track the language of *Ala. Code* § 13A-8-41(a)(1) in charging Debardelaben with first degree robbery.  This portion of the code section states that "[a] person commits the crime of robbery in the first degree if [in the course of committing a theft] he ... [i]s armed with a deadly weapon or dangerous instrument...."  Under *Ala. Code* § 13A-8-41(b), "[p]ossession then and there of an article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon or dangerous instrument, or other representation by the defendant that he is then and there so armed, is prima facie evidence under subsection (a) that he was so armed."  Thus, the statute, on its face, provides that an individual is "armed" for purposes of first degree robbery when he is either in actual possession of a deadly weapon/dangerous instrument or makes any representation of possession of a deadly weapon/dangerous instrument.  It is likewise clear that subsection (b) does not add an element to the offense of robbery first degree or in any way change the offense but merely "creates a rebuttable presumption that a person is armed" during the commission of the offense.  *Herndon v. State*, 563 So.2d 1065, 1066 (Ala. 1990).

2

recording of the robbery at Big Lots, produced testimony regarding a verbal statement made by Debardelaben, and presented testimony of the victims and law enforcement officials who investigated the robberies as evidence in the case.

Twyla Sauls, an employee of Family Dollar testified, in relevant part, as follows:

BY MR. ATWELL [The Prosecutor]:

* * *

Q.  ... [Y]ou were working for [Family Dollar] back in May of '08?

A.  Yes, sir.

Q.  And did something on May 6th unusual happen when you were working that day?

A.  On May 6th?  Yes, sir.

Q.  Okay.  Where were you working when this happened?

A.  Well, at that time I was cleaning the floor, sweeping the floor.

Q.  Was it nighttime, daytime?

A.  Nighttime, evening.

Q.  Okay.  And what, if anything, do you remember happening that evening?

A.  I remember we were being robbed.

Q.  Okay.  What made you think you were being robbed?

A.  Well, the person came in the store, you know, and as usual, you know, we say hello, and he made eye contact with us, like any normal customer would.  So I was continuing my sweeping the floor, and my manager called me up, you know, told me – she said, Open your drawer.  And I – I – she said, Go over – she said, Go over

to your register.  So I went over to my register.  And she said, You're going to have to open your drawer.

Q.  Who is your manager?

A.  Tanesha Rogers.

Q.  So Tensha asked you to open your register?

A.  Yes, sir.

Q.  Was there anybody else around that you saw when she told you this?

A.  He was there.  (Witness indicating by pointing.)

Q.  When you say he, you're pointing at –

A.  I'm pointing at him, yes, sir.

Q.  – this man in the white shirt over here?

A.  Yes, sir.

    MR. ATWELL:  Let the record reflect she's identifying the defendant.

BY MR. ATWELL:

Q.  Is this the same person you saw come in the store?

A.  Yes, sir.

Q.  Was there anybody else in the store?

A.  Yes, sir.  We had – we had another customer in there with small children.

Q.  Okay.  And when you were asked to open your drawer, who was present then?

A.  The store manager was at her register and the customer was right behind [Debardelaben].  And I walked between him and her to get to my – to get to mine.  And he came over to my register where I was at and he says, You got five seconds to open it, I have a gun.

Q.  He told you he had a gun?

A.  Yes, sir.

Q.  Did you see it?

A.  I did not see the gun.

Q.  All right.  But he told you you had five seconds to open your –

A.  He – he said – he said, You got five seconds to open this register.

Q.  Okay.  So what – what did you do?

A.  Well, I told him – I said, I can't just open the register, I don't have a key.  And my manager said, Ring up something, you know.  So he had a bag that he had already purchased, you know, and so he threw me this cleaner and told me to ring it up.

Q.  All right.  So did you do that?

A.  I did that and cashed it out.

Q.  All right.

A.  So my drawer would open.

Q.  So what did you do when your drawer opened?

A.  Well, he told me to take it out, and I just stepped back and he reached in and started grabbing it.

Q.  Okay.  Were you afraid?

5

A. Yes, sir.

Q. Okay. Had he already gotten any money before he came to your drawer?

A. He had gotten Tanesha's money.

Q. Okay. Where was Tanesha while you were emptying your money?

A. Over at her register.

Q. Okay. Do you have any idea how much money he got?

A. No, sir, I don't.

Q. All right. Did – and what did he put the money into?

A. A bag. His – the shopping bag.

Q. Do you know what kind of shopping bag it was?

A. Family Dollar shopping bag.

* * *

Q. Okay. All right. So when you put your money into the bag, or he put it into the bag, what did you do next?

A. He told us to go to the back of the store.

Q. When you say us, you're talking about you and Tanesha?

A. Me and Tanesha and the customer with the two small children. Yes, sir.

Q. And what did you do?

A. We started walking back to the back of the store.

6

Q.  All five of you?

A.  Yes.

Q.  All right.  And where did he go?  Did he take you back there?

A.  No.  He went – he was going toward the door to leave, but he waited till we got to the back before he went out.

Q.  Okay.  And what did y'all do after he got out?

A.  We called the police.

* * *

*Respondents' Exhibit A (Part 3) - Doc. No. 17-3* at 35-40.

Tanesha Rogers then provided the following pertinent testimony:

BY MR. ATWELL:

Q.  Would you introduce yourself to the jury, please?

A.  My name is Tanesha Rogers.  I'm the manager at Family Dollar.

Q.  How long have you been at Family Dollar?

A.  A little over eight years.

Q.  And you worked with Twyla?

A.  Yes.

Q.  And what – you said you're a manager there?

A.  Uh-huh.

Q.  Okay.  Were you so employed back on May 6th of 2008?

A.  Yes.

Q.  And were you working that night?

A.  Yes.

Q.  Who was working with you?

A.  Twyla Sauls.

Q.  Just the two of you?

A.  Yes.

Q.  And sometime that evening something kind of different happened, correct?

A.  Yes.

Q.  What was that?

A.  A robber.

Q.  All right.  Did you see the individual come in the store that robbed you?

A.  Yes.

Q.  Where were you working when he came in the store?

A.  At the back register.

Q.  There's a front register and a back register?

A.  It's two registers side by side.  I was on the far back one.

Q.  But they are both in the front of the store?

A.  Yes.

8

Q.  All right.  And you noticed him come in?

A.  Yes.

Q.  Where did he go when he came in?

A.  He entered the store and walked down the far south lane.  Went all the way to the back wall.  He grabbed some glass cleaner and another item or two, and then he came walking around.  He came all the way around the store, and he came up to the checkout to check out.

Q.  Okay.  And this person that you're talking about that did this to you, is he in the courtroom today?

A.  Yes.

Q.  Could you point him out, please?

A.  (Witness pointing.)  He's right there.

      MR. ATWELL:  Again, Your Honor, I'd like the record to reflect she's pointing to the defendant.

BY MR. ATWELL:

Q.  So he comes up to your register with these items?

A.  Yes.

Q.  And what did he do with those items?

A.  He laid them up like a regular customer.  I rung them up.  I asked him was that it and he said yeah, so I bagged it up.  He gave me his money.  Just when I cashed out the drawer, he pulled out a gun and said, Give me all your money.  And there was a little boy walking up to the register.  After I gave him the money, he pointed ... the gun to the little boy.... [T]he little boy said, Mommy, gun.  But I guess the mommy was on the phone, so – so – so into the phone she didn't hear him or whatever.  She walked up on [Debardelaben] and I was still giving him the money.

Then he made me call for the other cashier, which is Twyla.

Q. So he pulled this gun – where did he pull it from?

A. From out of his – the lining of his pants.

Q. The waistband?

A. Yes.

Q. Okay.  And what – did it scare you?

A. Yes.

Q. And when he told you – when he pulled it out, what did he want you to do?

A. Give [him] all the money out of the register.

Q. Okay.  And did you comply and give him the money from the register?

A. Yes.

Q. What did you do with it?

A. He made me put it into the bag where I had bagged his merchandise in.

Q. Okay.  And you said that he had you call the other –

A. Twyla.

Q. – clerk? Twyla?

A. Yes.

Q. What – what did you do – tell Twyla to do?

A. I told Twyla that she needed to give him all the money out of the register.  And then he walked around the counter in front of her and she – he told her to give him

10

all the money.  And she told him that she couldn't open the register without ringing up something, so he handed her the glass cleaner back out of the bag to make her ring it up.

Q.  Do you scan it?

A.  Yes.

Q.  And that opens the drawer?

A.  Yes.  Well, you total it out.

Q.  All right.  So she scans the glass cleaner, opens her drawer, and the money is removed from that?

A.  Yes.

Q.  So what happens next?

A.  It was me, the little boy and the lady, and Twyla.  He made us come out from around the counter and made us walk to the back, and told us to stay back there in the back, and he ran out the store and left.

Q.  What did y'all do when he left?

A.  Well, after we knew that he left, we called 9-1-1.

* * *

*Respondents' Exhibit A (Part 3) - Doc. No. 17-3 at 45-50.*

Angela Jackson Carroll, a customer service specialist at Big Lots, testified, in relevant part, as follows:

BY MR. ATWELL:

* * *

11

Q.  ... [W]hat does [a customer service specialist] do?

A.  Just supervisor of the cashiers.

Q.  Okay.  Were you ... working at a cash register around 8 p.m. [on May 6, 2008]?

A.  Yes, sir, I was.

Q.  Okay.  And did anything unusual happen at that time when you were working the register?

* * *

A.  ... [T]he gentleman came in, purchased a flashlight.

Q.  Right.

A.  And he asked me did we have batteries, and I pointed to the battery counter. And that's when he held his shirt up and showed me the gun and told me to put the money in the bag.

Q.  Okay.  Now, let's – let's take this one step at a time.  You're working on a register?

A.  Yes, sir.

Q.  First of all, this person you're talking about, do you see him here today?

A.  Yes, sir.

Q.  Could you point him out?

A.  (Witness Complies.) That gentleman right there.

Q.  Okay.

        MR. ATWELL:  Again, I'd like the record to reflect she's indicated the defendant.

BY MR. ATWELL:

Q.  Did you see him come in the store?

A.  No, sir, I didn't.

Q.  And when did you first notice him?

A.  When he came to my register.

* * *

Q.  Okay.  And what happened when he came up to your register?

A.  He just put the flashlight on the counter and went to purchase the flashlight.  And I scanned the flashlight, gave him his total, and he asked me about the batteries.  And I pointed to the battery counter, which was in the aisle – front aisle of the store at that time, and that's when he held his shirt up and showed me the gun.

Q.  All right.  Did he go to the battery counter or did he just stay there?

A.  He just stayed there.  He didn't go.  He just looked.

* * *

Q.  How did he [show you the gun], if you would tell the jury?

A.  He just held his shirt up, the tail of his shirt.  Above his pant line, waistline, is where the gun was.  I just saw that, the handle part of the gun.

Q.  Okay.  And how – you said this happened pretty quick?

A.  (Nods head affirmatively.)

Q.  Did he say anything to you?

A.  He just said, Put the money in the bag and don't say anything.

Q.  And did this scare you?

A.  Yes. Very much.

Q.  So you did what?

A.  I put the money in the bag.

Q.  And that was the money that was in your register?

A.  Yes, sir.

Q.  Okay.  And what happened after he did this?

A.  He told me to go to the back of the store.

Q.  What did you do?

A.  I proceeded to go to the back of the store, come out from behind the service desk and go to the back of the store.

* * *

*Respondents' Exhibit A (Part 4) - Doc. No. 17-4* at 8-12.  Each of the victims identified Debardelaben as the sole individual involved in the robberies.

Law enforcement officials testified that Debardelaben was apprehended following a high-speed chase, which reached speeds in excess of 100 miles per hour, covered approximately ten miles, and ended when Debardelaben wrecked his vehicle, and was pursued on foot for almost 200 yards into a densely wooded area.  *Respondents' Exhibit A (Part 4) - Doc. No. 17-4* at 22-23, 37.  The chase and apprehension of Debardelaben

14

occurred after dark.  *Id*. at 30.  The officers further testified that they did not find a gun in Debardelaben's vehicle or on his person at the time of his apprehension.  *Id*. at 28, 39.  In his statement to police, provided when an investigator introduced himself to Debardelaben and prior to any questions being presented by the investigator, Debardelaben alleged that an individual by the name of "D. J. made him rob Family Dollar and Big Lots."  *Id*. at 45. As Debardelaben "was beginning to reveal information about the robberies[,]" the investigator apprised Debardelaben of his *Miranda*[4] rights and Debardelaben "indicate[d] that he understood those rights" and "indicated that he wanted to talk to [the investigator]." *Id*. at 45-47.  When asked to tell "what happened with the robberies[,]" Debardelaben stated that:

> [H]e parked his car in the parking lot [of the Family Dollar] and walked into the store.  He walked up to the clerk and told her to give him all the money.  He stated that while he was getting the money, this supposed person, D.J., walked in and told him to hurry up.
>
> I asked him about a gun that he had or used or displayed.  He said he never had a gun.  I asked him why he made the clerks go to the back of the store and he would not answer that question.  He claims D.J. was the person that was wearing a red long-sleeved shirt [– a shirt found in the area of the wrecked vehicle].
>
> We went on.  I then asked him about ... the robbery at Big Lots.  He said that when he left Family Dollar, they went to Big Lots.  He first said that he went into the store, meaning Mr. Debardelaben, and then he caught himself and he said, No, it wasn't me, it was D.J. that went in the store.  He said that he stayed in the car while D. J. went in and did the robbery.  D.J. told him to wait in the car.  He said a couple of minutes later, D.J. got in the car and drove off, and that's when they left and police tried to stop them and

[4]*Miranda v. Arizona*, 384 U.S. 436 (1966).

> D.J. wouldn't stop.
>     He says once they finally crashed, they ran – jumped out of the car. He couldn't run so D.J. was trying to carry him and felt sorry for him, so [D.J.] said, Here's half the money, I'm sorry I couldn't help you.  And this D.J. person ran off.

*Id*. at 47-49.  Law enforcement officials gathered evidence, including statements obtained from the victims and the video recording from Big Lots, which established that "[t]here was never more than one person involved" in the robberies and identified Debardelaben as the person who committed the robberies.  *Id*. at 49.  Debardelaben called no witnesses on his behalf.  *Id*. at 68.

The evidence presented by the State indicated that Debardelaben was in actual possession of a handgun and/or represented such possession during the robberies. Debardelaben, however, introduced evidence on which the jury could have relied to determine that he was not armed during either of the robberies.  Consequently, the trial court instructed the jury on both first degree robbery and third degree robbery -- robbery committed while the defendant was not armed with a deadly weapon or dangerous instrument.  *Ala. Code* § 13A-8-43.  In charging the jury on first degree robbery, the trial court provided an instruction on the "armed" element of the offense as set forth in *Ala. Code* § 13A-8-41(b).  *Respondents' Exhibit A (Part 4) - Doc. No. 17-4* at 84 ("Now, as to the issue of whether the defendant was armed with a deadly weapon or dangerous instrument at the time of the commission of the robbery, ... under the law of Alabama,

possession then and there, meaning at the time of the robbery, of an article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon or dangerous instrument, or any verbal or other representation by the defendant that he is then and there so armed, is prima facie evidence under the law that he was so armed.").

After hearing all of the evidence and upon instruction by the court, the jury convicted Debardelaben on each count of first degree robbery. On June 24, 2009, the trial court conducted a sentencing hearing. At this hearing, the State presented certified copies of two armed robbery convictions imposed upon Debardelaben by the United States District Court for the District of Colorado, and a controlled substance conviction from the State of Colorado, for the court's review and possible use in sentencing Debardelaben as a habitual felony offender under *Ala. Code* § 13A-5-9, *et seq*. *Respondents' Exhibit A (Part 1) - Doc. No. 17-1* at 37-57. Due to age of the federal convictions, the federal court records were "housed at the Federal Records Center facility ... in Denver." *Id*. at 61. Based on the foregoing, the Regional Administrator for the Regional Archives and Records Administration Rocky Mounty Division in Denver, Colorado certified the copies of these records. *Id*. at 37. The State also provided an exemplified certificate of a copy of Debardelaben's conviction for unlawful distribution of a controlled substance imposed upon him in 2000 by the State of Colorado. *Id*. at 65; *Respondents' Exhibit A (Part 2) -*

17

*Doc. No. 17-2* at 1-18. Debardelaben challenged use of the federal convictions for purposes of sentence enhancement arguing that these copies were not "exemplified" as required by *Ala. Code* § 12-21-70. *Respondents' Exhibit A (Part 4) - Doc. No. 17-4* at 104 Defense counsel argued that "absent attestation according to ... 12-21-70 ... those [federal convictions] are not ... in proper form to be used to invoke [sentence enhancement] under the Habitual Offender Act." *Id.* In response to this argument, the State asserted that *Ala. Code* § 13A-5-10.1(a) governs the proof necessary for use of prior felony convictions to enhance a defendant's sentence and argued that under this code section "[c]ertified copies of case action summary sheets, docket sheets or other records of the court are admissible for the purpose of proving prior convictions of a crime.... [T]hese convictions are in conformity with 13A-5-10.1 and [applicable] case law [referencing use of certified copies from courts outside of Alabama for purposes of sentence enhancement]. These are sufficient records of prior convictions that this Court should use for an habitual offender." *Id.* at 106; *Shumate v. State,* 676 So.2d 1345, 1347 (Ala.Cr.App. 1995) ("In order to prove a prior felony conviction, the state must present a certified copy of the conviction to the trial court at the sentencing hearing. *Allen v. State,* 611 So.2d 1152, 1155-56 (Ala.Cr.App. 1992). 'A "certified copy" of a public record is one that is signed and certified as a true copy by the officer who has lawful custody of the original.' C. Gamble, *McElroy's Alabama Evidence,* § 218.01 (4th ed. 1991). Under present Alabama case law, certified

18

copies of public records are self-authenticating and admissible into evidence. *Bentley v. State,* 450 So.2d 197, 199 (Ala.Cr.App. 1984). Similarly, Rule 902(4) of the Alabama Rules of Evidence ... provides for self-authentication of certified copies of public records."); *Johnson v. State,* 541 So.2d 1112, 1115 (Ala.Cr.App. 1989) ("The proper method for proving prior convictions under the Habitual Offender Act is by the introduction of certified copies of the previous convictions."); *Wright v. State*, 709 So.2d 1318, 1320 (Ala.Cr.App. 1997) (Copies of case action summary sheets and docket sheets provided as proof of prior felony convictions signed and certified as a true copy by an officer with lawful custody of the original "were properly certified for purposes of application of the Habitual Felony Offender Act."); *Ginn v. State*, 894 So.2d 793, 798-799 (Ala.Cr.App. 2004) (State met its burden of proof for sentence enhancement under the Habitual Felony Offender Act with respect to defendant's prior Georgia convictions by introducing certified copies of Georgia indictment charging defendant with burglary and theft and Georgia trial court's sentencing orders regarding the burglary and theft convictions.); *Poole v. State*, 710 So.2d 497, 500 (Ala.Cr.App. 1997) ("The certified copies of the 'Bill of Indictment,' 'Final Disposition,' and 'Prisoner's Personal History Sheet' in [a case from Monroe County, Georgia] are clearly 'other records of the court' under § 13A-5-10.1 and unquestionably show that [the defendant] pleaded guilty to three offenses - armed robbery, aggravated assault on a police officer, and possession of a sawed-off

19

shotgun - and that he was represented by counsel when he did so....  These same documents reflect that he was sentenced separately for each conviction.... The certified copies of these documents [from the Georgia convictions] ... were properly admitted by the trial court as proof of three prior felony convictions for the purpose of applying the Habitual Felony Offender Act."); *Summerford v. State*, 621 So.2d 1346, 1351 (Ala.Cr.App. 1993) (holding appellant's argument that prior convictions cannot be used to enhance his sentence because they do not contain the signature or initials of the judge "without merit" because *Ala. Code* § 13A-5-10.1(a) specifically "provides: '(a) Certified copies of case action summary sheets, docket sheets or other records of the court are admissible for the purpose of proving prior convictions of a crime, if the prior conviction is otherwise admissible under the laws of this state.'").  After reviewing applicable state law and the copies of Debardelaben's prior federal convictions which were certified by the Regional Administrator for the National Archives and Records Administration, the individual who maintained actual custody of the original documents, the trial court determined that these convictions were properly proven in accordance with state law for purposes of sentence enhancement under the Habitual Felony Offender Act, and imposed sentence upon Debardelaben as a habitual offender with three prior felony convictions.  *Respondents' Exhibit A (Part 4) - Doc. No. 17-4* at 111.[5]

Debardelaben filed a direct appeal of his convictions in which he challenged the

---

[5]Debardelaben did not at sentencing or at any other time challenge the use of his prior felony conviction from the State of Colorado for enhancement purposes.

sufficiency of the evidence to support his convictions for first degree robbery, contending that the State failed to prove possession of a deadly weapon or dangerous instrument. He also argued that the trial court erred in sentencing him to life without parole under the Habitual Felony Offender Act because the two prior federal felony convictions were not properly authenticated under *Ala. Code* § 12-21-70. *Respondents' Exhibit B - Doc. No. 17-5* at 12. On December 11, 2009, the Alabama Court of Criminal Appeals affirmed Debardelaben's robbery convictions in an unpublished memorandum opinion. *Respondents' Exhibit D - Doc. No. 17-7.* The appellate court set forth the evidence presented at trial and then addressed each of Debardelaben's claims for relief. The court's opinion, as is relevant to the claims raised in the instant habeas petition, reads as follows:

### I.

Debardelaben first argues that the trial court erred in denying his motion for judgment of acquittal because, he says, insufficient evidence existed to support his first-degree robbery convictions. More particularly, Debardelaben claims that the State failed to prove possession of a deadly weapon or dangerous instrument, a handgun.

This Court has held:

"In deciding whether there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, the evidence must be reviewed in the light most favorable to the prosecution. *Cumbo v. State,* 368 So.2d 871 (Ala.Cr.App.1978), cert. denied, 368 So.2d 877 (Ala.1979). Conflicting evidence presents a jury question not subject to review on appeal, provided the state's evidence establishes a prima facie case. *Gunn v. State,* 387 So.2d 280 (Ala.Cr.App.), cert. denied, 387 So.2d 283 (Ala.1980). The trial court's denial of a motion for a judgment of acquittal must be reviewed by determining whether there existed legal evidence before the

jury, at the time the motion was made, from which the jury by fair inference could have found the appellant guilty. *Thomas v. State,* 363 So.2d 1020 (Ala.Cr.App.1978). In applying this standard, the appellate court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. *Willis v. State,* 447 So.2d 199 (Ala.Cr.App.1983); *Thomas v. State.* When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for a judgment of acquittal by the trial court does not constitute error. *Young v. State,* 283 Ala. 676, 220 So.2d 843 (1969); *Willis v. State.*"

*Breckenridge v. State*, 628 So.2d 1012, 1018 (Ala.Crim.App. 1993).

"'In determining the sufficiency of the evidence to sustain the conviction, this Court must accept as true the evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution.' *Faircloth v. State,* 471 So.2d 485, 489 (Ala.Cr.App.1984), affirmed, *Ex parte Faircloth,* 485 So.2d 493 (Ala.1985).

""...

""""The role of appellate courts is not to say what the facts are. Our role, ... is to judge whether the evidence is *legally* sufficient to allow submission of an issue for decision to the jury." *Ex parte Bankston,* 358 So.2d 1040, 1042 (Ala.1978). An appellate court may interfere with the jury's verdict only where it reaches "a clear conclusion that the finding and judgment are wrong." *Kelly v. State,* 273 Ala. 240, 244, 139 So.2d 326 (1962).... A verdict on conflicting evidence is conclusive on appeal. *Roberson v. State,* 162 Ala. 30, 50 So. 345 (1909). "[W]here there is ample evidence offered by the state to support a verdict, it should not be overturned even though the evidence offered by the defendant is in sharp conflict therewith and presents a substantial defense." *Fuller v. State,* 269 Ala. 312, 333, 113 So.2d 153 (1959), cert. denied, *Fuller v. Alabama,* 361 U.S. 936, 80 S.Ct. 380, 4 L.Ed.2d 358 (1960).' *Granger* [v. State]*, 473 So.2d [1137,] 1139 [(Ala.Crim.App. 1985)]."

> "... 'Circumstantial evidence alone is enough to support a guilty verdict of the most heinous crime, provided the jury believes beyond a reasonable doubt that the accused is guilty.' *White v. State,* 294 Ala. 265, 272, 314 So.2d 857, cert. denied, 423 U.S. 951, 96 S.Ct. 373, 46 L.Ed.2d 288 (1975). 'Circumstantial evidence is in nowise considered inferior evidence and is entitled to the same weight as direct evidence provided it points to the guilt of the accused.' *Cochran v. State,* 500 So.2d 1161, 1177 (Ala.Cr.App.1984), affirmed in pertinent part, reversed in part on other grounds, *Ex parte Cochran,* 500 So.2d 1179 (Ala.1985)."

*White v. State*, 546 So.2d 1014, 1017 (Ala.Crim.App. 1989). Also,

> "'[c]ircumstantial evidence is not inferior evidence, and it will be given the same weight as direct evidence, if it, along with the other evidence, is susceptible of a reasonable inference pointing unequivocally to the defendant's guilt. *Ward v. State,* 557 So.2d 848 (Ala.Cr.App.1990). In reviewing a conviction based in whole or in part on circumstantial evidence, the test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. *Cumbo v. State,* 368 So.2d 871 (Ala.Cr.App.1978), cert. denied, 368 So.2d 877 (Ala.1979).'

> "*Ward*, 610 So.2d at 1191-92."

* * *

Further, it is well settled that "[t]he weight and probative value to be given to the evidence, the credibility of the witnesses, the resolution of conflicting testimony, and inferences to be drawn from the evidence are for the jury." *Smith v. State*, 698 So.2d 189, 214 (Ala.Crim.App. 1996), aff'd, 698 So.2d 210 (Ala. 1997).

* * *

To convict a defendant of the offense of first-degree robbery, the State must prove the following: 1) that a person is armed with a deadly weapon or dangerous instrument, and 2) during the course of a theft, that he threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking or escaping with the

property.  §§ 13A-8-41(a)(1) and 13A-8-43(a)(2), Ala. Code 1975. Section 13A-8-41(b), however, provides that "any verbal or other representation by the defendant that he is then and there so armed, is prima facie evidence under subsection (a) of this section that he was so armed." Thus, an accused need not actually be armed with a deadly weapon to be convicted of first-degree robbery under § 13A-8-41(a)(1); he need only represent that he is so armed. *See, e.g., Dick v. State*, 677 So.2d 1267 (Ala.Crim.App. 1996). Further, belief by the victim that the defendant has a weapon is sufficient. *Stallings v. State*, 793 So.2d 867, 868 (Ala.Crim.App. 2000); *Porter v. State*, 666 So.2d 106, 108 (Ala.Crim.App. 1995); *Dinkins v. State*, 584 So.2d 932, 933 (Ala.Crim.App. 1991).

In this particular case, the evidence presented by the State established that Debardelaben entered the Family Dollar store in Dothan, while Rodgers and Sauls were working, grabbed some glass cleaner and other items, proceeded to the checkout, and after Rodgers rang up the items and Debardelaben paid for the items, Debardelaben pulled out a gun and instructed Rodgers to give him the money from the cash register. Specifically, Debardelaben said to Rodgers, "'give me all your money.'" As Rodgers testified, Debardelaben then pointed the gun at a young boy and demanded that Rodgers call Sauls to open her register. When Sauls arrived at the front of the store, he told Sauls "'you have give seconds to open [the register], I have a gun.'" After Debardelaben took the money from both registers, he ordered Rodgers, Sauls and the little boy and his mother to the back of the store, and he fled the Family Dollar store. The evidence showed that while Sauls did not recall seeing a gun, she believed that Debardelaben had a gun, and Rodgers specifically testified that she saw the gun.

After leaving the Family Dollar store, Debardelaben entered the Big Lots store nearby in Dothan. Once in the store, Debardelaben brought a flashlight to the register, and as Carroll scanned the flashlight, he inquired about the location of batteries for the flashlight. As Carroll pointed to the battery counter, Debardelaben "held his shirt up and showed [her] the gun and told [her] to put the money in the bag." More particularly, Carroll testified that the gun was in the waistband of Debardelaben's pants and she specifically saw the handle of the gun.

Even though no gun was recovered, the officers pursued Debardelaben on a 10 mile chase on US Highway 231. Because if was evening and was dark, Debardelaben could have easily disposed of the gun prior to wrecking his vehicle.... Further, although [due to the angle of the camera] the

surveillance videotape recording of the Big Lots robbery also did not depict a weapon, the victim, Carroll testified that she saw a gun.  As this Court said in *Dick v. State*:

> "the presence of a gun is not dispositive of whether a robbery has been committed. As this Court stated in *Stewart v. State,* 443 So.2d 1362, 1363-64 (Ala.Cr.App.1984).
>
> > "'This court has held on several occasions that it is not necessary to prove that a defendant displayed a gun during a robbery or that he actually had a gun to sustain a conviction for Robbery in the First Degree. *Miller v. State,* 431 So.2d 586 (Ala.Cr.App.1983); *Bender v. State,* 420 So.2d 843 (Ala.Cr.App.1982); *James v. State,* 405 So.2d 71 (Ala.Cr.App.1981). In *James v. State,* supra, the court stated, "Indeed, in order to be convicted of first degree robbery an accused need not even be armed with a deadly weapon or dangerous instrument where (1) he possesses any object reasonably believed to be a deadly weapon or dangerous instrument or represents in some manner that he has one and (2) there is no evidence to rebut or refute this reasonable belief or representation." *James v. State,* supra, at 73. Here, appellant's actions and threats instilled in the victim the reasonable belief that he was armed with a gun, and under §13A-8-41(b) this constituted prima facie evidence that he was so armed, and the jury's determination in this matter should be upheld.'"

"*Stewart v. State*, 443 So.2d 1362, 1363-64 (Ala.Cr.App. 1983). 677 So.2d at 1270. *See also Bennett v. State*, 584 So. 2d 869, 870-71 (Ala.Crim.App. 1990) (defendant need only represent that he has a dangerous weapon or instrumentality and the test is a subjective one that focuses on the victim's reaction to the threats of the robber); *Breedlove v. State*, 482 So.2d 1277, 1281 (Ala.Crim.App. 1985) (mere fact that victim did not see weapon did not defeat conviction for first-degree robbery); *Richardson v. State*, 476 So.2d 1247, 1249 (Ala.Crim.App.) (not necessary to prove that defendant displayed a gun or even had a gun to sustain conviction for first-degree

robbery).

Accordingly, the State presented a prima facie case of first-degree robbery that was properly submitted to the jury. The testimony of the victims presented sufficient evidence from which the jury could find that [the victims] had a subjectively reasonable belief that Debardelaben was armed, even though Debardelaben claimed in his statement to the police that he was not armed. Any conflicts in the evidence or credibility choices were for the jury, and the jury obviously resolved those choices adversely to Debardelaben. We will not invade the province of the jury and reweigh the evidence in this case. Based on the record before us, there was sufficient legal evidence from which the jury could have reasonably found Debardelaben guilty of first-degree robbery on both charges. Therefore, the trial court correctly denied Debardelaben's motion for a judgment of acquittal and submitted the case to the jury.

II.

Debardelaben next argues that the trial court erred in sentencing him to life in prison without the possibility for parole, pursuant to the Habitual Felony Offender Act, based on two prior federal felony convictions, because, he says, the convictions were not properly authenticated as required by § 12-21-70, Ala. Code 1975. More particularly, he claims that the prior federal convictions were not in "proper form" because they were not properly exemplified.

"For purposes involving the application of the Habitual Felony Offender Act, a prior conviction may be proved by either as provided by Ala. Code 1975, § 12-21-70, or as provided by Rule 44(a)(1), A.R.Civ.P." *Ervin v. State*, 630 So.2d 115, 119 (Ala.Crim.App. 1992). [In addition, as set forth *infra*, state law likewise allows proof of a prior conviction for sentence enhancement purposes as directed by *Ala. Code* § 13A-5-10.1(a).] Thus, Debardelaben's argument is misplaced because [any of these] provision[s] may be applied to prove a prior conviction. Section 12-21-70, Ala. Code 1975 provides:

> "The acts of the legislature of any state or territory or of any country subject to the jurisdiction of the United States shall be authenticated by having the seals of such state, territory or country affixed thereto. The record and judicial proceedings of the courts of any state or territory or of any such country shall be proved or admitted in any other court within the United States by the attestation of the clerk and the seal of the court

26

annexed, if there is a seal, together with a certificate of the judge, Chief Justice or presiding magistrate that the said attestation is in due form. The said records and judicial proceedings so authenticated shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the state from which they are taken."

Rule 44(a)(1), A.R.Civ.P., states:

"(a)  Authentication.

"(1)  Domestic.  An official record kept within the United States, or any state, district, commonwealth, territory, or insular possession thereof, or within a territory subject to the administrative or judicial jurisdiction of the United States or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by a person purporting to be the officer having the legal custody of the record, or by the officer's deputy. If the official record is kept without the state, the copy shall be accompanied by a certificate under oath of such person that such person is the legal custodian of such record and that the laws of the state require the record to be kept."

*See also Thigpen v. State*, 825 So.2d 241, 245 (Ala.Crim.App. 2001).

Further, this Court stated as follows in *Ginn v. State*, 894 So.2d 793 (Ala.Crim.App. 2004):

"In Alabama, the State bears the burden of proving the existence of prior felony convictions for enhancement under the HFOA. See *Tyler v. State*, 683 So.2d 1062 (Ala.Crim.App. 1995), aff'd, 683 So.2d 1065 (Ala. 1996); *Reynolds v. State*, 615 So.2d 94 (Ala.Crim.App. 1992); and *Meadows v. State*, 473 So.2d 582 (Ala.Crim.App. 1985). Rule 26.6(b)(3)(iii), Ala.R.Crim.P., provides:

"'At the [sentencing] hearing, the burden of proof shall be on the state to show that the defendant has been convicted of a previous felony or felonies. Evidence may be presented by both the state and the defendant as to any matter the court deems relevant to the application of the law. In determining disputed facts, the court

shall use the standard of proof beyond a reasonable doubt. If at the hearing the defendant disputes any conviction presented by the state, the court may allow the state to present additional evidence of the disputed conviction, either by way of rebuttal or at a future time to be set by the court. If the state fails to meet its burden of proof to establish one or more prior felony convictions, then the defendant shall not be sentenced as an habitual offender.'

"'Certified case action summaries and other certified records from the clerk of the court are sufficient to prove prior convictions.' *Daughtry v. State*, 587 So.2d 1286, 1286 (Ala.Crim.App. 1991). See also § 13A-5-10.1(a), Ala.Code 1975 ("Certified copies of case action summary sheets, docket sheets or other records of the court are admissible for the purpose of proving prior convictions of a crime."); and *Ervin v. State*, 630 So.2d 115, 119 (Ala.Crim.App. 1992) (holding that a prior conviction from another state "may be proved either as provided by Ala.Code 1975, § 12-21-70, or as provided by Rule 44(a)(1), Ala.R.Civ.P."). Moreover, the documentation introduced by the State need not specifically state that there was an "adjudication of guilt":

"'The requirement that there has been an "adjudication of guilt" does not require exact and specific terminology in order to satisfy the requirements of the HFOA. Giving this statute its practical application, where the record shows that the appellant pleaded guilty in court in the presence of his attorney and a sentencing order was then filed, as acknowledged by the circuit court, this must be construed as an adjudication of guilt in order "to prevent absurdity, hardship, or injustice, and to favor public convenience." *Baker v. State*, 483 N.E.2d 772, 774 (Ind.App. 1985).'

"*Morgan v. State*, 733 So.2d 940, 943 (Ala.Crim.App. 1999) (footnote omitted).

28

"'This court has held that, once the State has made proper proof of a prior conviction for the sentencing purposes and the defendant objects, the defendant bears the burden of presenting evidence in support of his objection.' *Campbell v. State*, 709 So.2d 1329, 1335 (Ala.Crim.App. 1997). 'The burden of showing that a prior conviction is invalid for enhancement purposes is on the appellant.' *Thigpen v. State*, 825 So.2d 241, 245 (Ala.Crim.App. 2001) (opinion on return to remand) (Rule 32 petitioner's claim that his sentence was improperly enhanced was meritless because the petitioner failed to offer evidence proving that he was not represented by counsel and the case action summary introduced by the State affirmatively indicated that he was represented by counsel). See also *Tyler*, 683 So.2d at 1064 (appellant's claim that his sentence was improperly enhanced was meritless because the appellant failed to offer evidence proving that he was not represented by counsel and the State's evidence reflected that he was represented by counsel), and *Weeks v. State*, 473 So.2d 589, 591 (Ala.Crim.App. 1985)(name on documentation of Louisiana convictions matched appellant's name, thus creating 'a prima facie presumption of the sameness of the person' and the appellant did not present any evidence to rebut that presumption)."
894 So.2d at 798-99.

At the sentencing hearing, the State sought to enhance Debardelaben's sentences on both first-degree robbery convictions, pursuant to the HFOA, based upon a prior felony state conviction in Colorado for unlawful possession of a controlled substance and two prior federal felony convictions for armed bank robbery in Colorado. Debardelaben's counsel argued that two of the three prior convictions were not in proper form pursuant to § 12-21-70, Ala. Code 1975, because they were not exemplified. Specifically, Debardelaben argued that the two prior federal felony convictions were not exemplified. Therefore, Debardelaben submitted that he should be sentenced as if he had one prior felony conviction, the Colorado state conviction. In response, the State argued that pursuant to § 13A-5-10.1(a), Ala. Code 1975, and [state case law], the prior [federal] convictions should be used to enhance Debardelaben's sentence[s] under the Alabama Habitual Felony Offender Act.... After hearing argument of counsel and reviewing the statutes and cases, the trial judge found that the State sufficiently proved Debardelaben's prior convictions. We find no error in the use of the certified copies of the prior federal convictions to enhance Debardelaben's sentence[s].

      In this case, the record shows that the documents offered to prove Debardelaben's prior federal convictions were certified by the Regional Administrator of the National Archives and Records Administration, Barbara Voss, that they were a true and correct copy of the documents [located in the regional archives in Denver, Colorado] pertinent to Debardelaben's prior federal convictions for armed bank robbery. The certified copies are clearly "other records of the court" under § 13A-5-10.1(a), Ala. Code 1975, and show that Debardelaben pleaded guilty to two offenses of armed bank robbery and that he was represented by counsel when he did so. These same documents reflect that he was sentenced to 63 months imprisonment for each conviction. Thus, the trial court properly admitted the certified copies of these documents as proof of two prior felony convictions for the purpose of applying the Habitual Felony Offender Act.  Because Debardelaben did not dispute the authenticity of the prior Colorado felony [controlled substance] conviction and we conclude that the two prior federal felony convictions were properly admitted, the trial court did not err in sentencing Debardelaben to life without the possibility of parole on both robbery charges. *See* § 13A-5-9(c)(4), Ala. Code 1975.

      For the foregoing reasons, Debardelaben's convictions are due to be affirmed.

*Respondents' Exhibit D - Doc. No. 17-7* at 7-23 (citations to record and footnotes omitted).

Debardelaben filed an application for rehearing which the Alabama Court of Criminal Appeals denied on January 8, 2010. *Respondents' Exhibit F - Doc. No. 17-9.*  The Alabama Supreme Court denied Debardelaben's petition for writ of certiorari and issued the Certificate of Judgment on April 9, 2010. *Respondents' Exhibit H - Doc. No. 17-11.*

On April 5, 2011, Debardelaben filed a *pro se* state post-conviction petition pursuant to Rule 32 of the Alabama Rules of Criminal Procedure with the Circuit Court of Houston

County, Alabama.[6]  In this petition, Debardelaben alleged that:  (1) Trial counsel was

ineffective because he failed to object or file a motion for new trial challenging the trial

court's alleged constructive amendment of the indictment when it instructed the jury that

representation of possession of a deadly weapon constituted being armed with a deadly

weapon "[w]hen Petitioner ... was indicted for being armed with a deadly weapon[], to:wit

a handgun."  *Respondents' Exhibit I - Doc. No. 17-12* at 22; (2) The trial court lacked

jurisdiction to impose a sentence of life without parole under the Habitual Felony Offender

Act because the two prior federal felony convictions for armed robbery were not properly

proven as the submitted copies "failed to comply with [either] Rule 44(a)(1), Ala.R.Civ.P.,

[or] § 12-21-70, Ala. Code 1975, because the documents [were not accompanied by] a

Certificate to show a attestation under oath of such person that such person is the legal

custodian of such record[s]...."  *Id.* at 26; (3) Trial and appellate counsel were ineffective

for failing to adequately investigate the federal records submitted by the State to invoke the

Habitual Felony Offender Act so as to present proper objections regarding lack of

certification  of these records.  *Id.* at 28; and (4) The trial court lacked jurisdiction due to

---

[6]Debardelaben certified that he placed the petition in the prison mail system on April 5, 2011.  *Respondents' Exhibit I - Doc. No. 17-12* at 13.  As previously noted, a pro se inmate's petition is deemed filed in federal cases the date the petition is delivered to prison officials for mailing.  *Houston,* 487 U.S. at 271-272.  "Alabama courts have [adopted this rule and] held that a pro se incarcerated petitioner/appellant is considered to have 'filed' a Rule 32 petition, a notice of appeal, or a petition for a writ of certiorari when those documents are given to prison officials for mailing." *Ex parte Allen*, 825 So.2d 271, 272 (Ala. 2002); *Holland v. State*, 621 So.2d 373, 375 (Ala.Crim.App. 1993) ("[A] pro se incarcerated petitioner 'files' a Rule 32 petition when he hands the petition over to prison authorities for mailing.").  Consequently, the prison mailbox rule applies to pro se Rule 32 petitions filed in the state courts of Alabama.  Thus, April 5, 2011 is the appropriate date of filing for Debardelaben's Rule 32 petition.

its erroneous constructive amendment of the indictment in charging the jury that "representation" by a defendant that he is armed with a deadly weapon is prima facie evidence that he is so armed. *Id*. at 36.

The trial court summarily denied Debardelaben relief on the claims raised in his Rule 32 petition. Debardelaben appealed the denial of his Rule 32 petition in which he raised the same claims as those presented to the trial court. The Alabama Court of Criminal Appeals issued a memorandum opinion on December 9, 2011, in which it decided the merits of the issues raised adversely to Debardelaben. *Respondents' Exhibit L - Doc. No. 17-15*. The relevant portion of this opinion reads as follows:

> ... In this case, we have thoroughly reviewed the Rule 32 record as well as the record from Debardelaben's direct appeal, and it is clear ... that, for the reasons that follow, all of the claims raised in Debardelaben's petition are meritless....
>
> In his petition, Debardelaben alleged that the copies of his two prior federal armed-robbery convictions were not properly certified in accordance with § 12-21-70, Ala. Code 1975, or Rule 44(a)(1), Ala.R.Civ.P. Specifically, he argued that the copies failed to comply with any of the requirements in § 12-21-70 and failed to comply with the second sentence of Rule 44(a)(1), which requires a certificate under oath that the person certifying the record is the legal custodian of the record and that the laws of the state require that the record be kept.
>
> The record from Debardelaben's direct appeal reflects that the State introduced into evidence at Debardelaben's sentencing hearing two prior convictions form the United States District Court in the District of Colorado for armed robbery. [Debardelaben does not challenged the third prior felony conviction used by the State to enhance his sentence.] Those convictions were obtained from the National Archives and Records Administration [from the regional division located in Denver, Colorado], and were certified by Barbara Voss, the Regional Administrator for the National Archives and

Records Administration in Colorado. The certification provides:

> "By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf, under the seal of the National Archives and Records Administration, that the attached reproduction(s) is a true and correct copy of the documents in his custody."

... Imprinted on the certification is the seal of the National Archives and Records Administration.

Section 12-21-70, Ala. Code 1975 provides:

> "The acts of the legislature of any state or territory or of any country subject to the jurisdiction of the United States shall be authenticated by having the seals of such state, territory or country affixed thereto. The record and judicial proceedings of the courts of any state or territory or of any such country shall be proved or admitted in any other court within the United States by the attestation of the clerk and the seal of the court annexed, if there is a seal, together with a certificate of the judge, Chief Justice or presiding magistrate that the said attestation is in due form. The said records and judicial proceedings so authenticated shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the state from which they are taken."

Rule 44(a)(1), Ala.R.Civ.P., states:

> "(a)  Authentication.
>
> "(1)  <u>Domestic</u>.  An official record kept within the United States, or any state, district, commonwealth, territory, or insular possession thereof, or within a territory subject to the administrative or judicial jurisdiction of the United States or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by a person purporting to be the officer having the legal custody of the record, or by the officer's deputy. If the official record is kept without the state, the copy shall be accompanied by a certificate under oath of such person that such person is the legal custodian of such record and that the laws of the state require the record to be kept."

This Court has held that "for purposes involving the application of the

Alabama Habitual Felony Offender Act, a prior conviction may be proved either as provided by Ala. Code 1975, § 12-21-70, or as provided by Rule 44(a)(1), Ala.R.Civ.P." *Ervin v. State*, 630 So.2d 115, 119 (Ala.Crim.App. 1992). However, contrary to Debardelaben's apparent contention, § 12-21-70 and Rule 44(a)(1), Ala.R.Civ.P., are not the only methods of proving a prior conviction from another jurisdiction. Section 12-21-73(9), Ala. Code 1975, specifically provides:

> "As an additional or alternative mode of proof, the following documents may be proved as follows:
>
> > "....
> >
> > "(9) Documents in the departments of the United States government, by the certificate of the legal custodian thereof."

In this case, the copies of Debardelaben's prior federal armed-robbery convictions were properly certified in accordance with § 12-21-73(9). The National Archives and Records Administration is a department of the United States government. In addition, Barbara Voss, identified as the regional administrator of that department in Colorado where copies of Debardelaben's [federal] convictions were kept, was obviously, legal custodian of the records. *See*, *e.g.*, *Ex parte Lucas*, 865 So.2d 418, 421-22 (Ala. 2002) (holding that postconviction petitioner's prior court-martial convictions were properly certified in accordance with § 12-21-73(9), where a captain in the United States Marine Corps in the Administrative Support Division of the Office of the Judge Advocate General's Office certified the prior convictions as true and correct copies). Therefore, Debardelaben's claim in this regard is meritless.

### III.

In his petition, Debardelaben also alleged that the trial court lacked jurisdiction to render the judgments or to impose the sentences because, he said, the court improperly constructively amended the indictment during its jury instructions when it instructed the jury that a representation by the defendant that he was armed with a deadly weapon was sufficient to satisfy the element of first-degree robbery of being armed with a deadly weapon or dangerous instrument. Debardelaben argues on appeal, as he did in his petition, that he was indicted for actually possessing a weapon during the robbery not for merely representing that he possessed a weapon and that instructing the jury on representation resulted in the charge against him being amended to allege a new or different offense than that charged in the

indictment and of which he was never given notice. [Contrary to Debardelaben's argument, the indictments merely charged that he was armed with a deadly weapon during the robberies at issue. The indictments did not specify either actual possession or represented possession of a deadly weapon.]

Debardelaben was indicted for robbing a Family Dollar discount store in Dothan and then immediately thereafter robbing a Big Lots store nearby. The first indictment charged:

> "The Grand Jury ... charge that, before the finding of this indictment, GREGORY LAWON DEBARDELABEN ... did in the course of committing a theft, or attempting to commit a theft of UNITED STATES CURRENCY, the property of FAMILY DOLLAR, use force against the person of TANISHA RODGERS, with intent to overcome HER physical resistance or physical power of resistance, or threaten the imminent use of force against the person of TANISHA RODGERS, with intent to compel acquiescence to the taking of or escaping with the property, while ... DEBARDELABEN was armed with a deadly weapon or dangerous instrument, to-wit: A HANDGUN, in violation of Section 13A-8-41 of the Code of Alabama, against the peace and dignity of the State of Alabama."

... The second indictment charged:

> "The Grand Jury ... charge that, before the finding of this indictment, GREGORY LAWON DEBARDELABEN ... did in the course of committing a theft, or attempting to commit a theft of UNITED STATES CURRENCY, the property of BIG LOTS, use force against the person of ANGELA JACKSON, with intent to overcome HER physical resistance or physical power of resistance, or threaten the imminent use of force against the person of ANGELA JACKSON, with intent to compel acquiescence to the taking of or escaping with the property, while ... DEBARDELABEN was armed with a deadly weapon or dangerous instrument, to-wit: A HANDGUN, in violation of Section 13A-8-41 of the Code of Alabama, against the peace and dignity of the State of Alabama."

...

35

Some of the witnesses to the robberies testified that they saw Debardelaben in possession of a weapon. [Another] testified that [she] did not actually see a weapon in Debardelaben's possession, but that he represented that he had a weapon, and that [she] believed that he had a weapon. Although Debardelaben was arrested shortly after the robberies [after a high-speed chase which covered approximately 10 miles], no weapon was recovered.  Debardelaben's defense at trial was that he did not possess a gun at the time of the robberies, and, thus, that he was guilty of only third-degree robbery not first-degree robbery.  The trial court instructed the jury on third-degree robbery as a lesser-included offense of the two first-degree-robbery charges.  The trial court also instructed the jury as follows:

> "Now, as to the issue of whether the defendant was armed with a deadly weapon or dangerous instrument at the time of the commission of the robbery, I will tell you that under the law of Alabama, possession then and there, meaning at the time of the robbery, of an article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon or dangerous instrument, or any verbal or other representation by the defendant that he is then and there so armed, is prima facie evidence under the law that he was so armed."

...

Section 13A-8-41(a)(1), Ala. Code 1975, provides that "[a] person commits the crime of robbery in the first degree if he violates Section 13A-8-43 [i.e., commits a theft of property by use of force or a threatened use of force] and he ... [i]s armed with a deadly weapon or dangerous instrument." Section 13A-8-41(b), Ala. Code 1975, provides that "[p]ossession then and there of an article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon or dangerous instrument, or any verbal or other representation by the defendant that he is then and there so armed, is prima facie evidence under subsection (a) of this section that he was so armed." Contrary to Debardelaben's [implicit] contention, § 13A-8-41(b) does not create a separate offense of first-degree robbery, nor does it create an alternative method of proving the offense of first-degree robbery. Rather, § 13A-8-41(b) does nothing more than create a rebuttable presumption that a person is considered to be "armed with a deadly weapon or dangerous instrument" for purposes of § 13A-8-41(a)(1) if that person possesses "an article used or fashioned in a manner to lead any

person who is present reasonably to believe it to be a deadly weapon or dangerous instrument" or makes "any verbal or other representation ... that he is then and there armed."

Rule 13.5, Ala.R.Crim.P., provides:

"A charge may be amended by order of the court with the consent of the defendant in all cases, except to change the offense or to charge new offenses not contemplated by the original indictment. The court may permit a charge to be amended without the defendant's consent, at any time before verdict or finding, if no additional or different offense is charged and if the substantial rights of the defendant are not prejudiced."

In this case, charging the jury on the rebuttable presumption in § 13A-8-41(b) did not amend the indictment to charge a new or different offense as Debardelaben contends.  *See Ash v. State*, 843 So.2d 213, 215-16 (Ala. 2002), overruled on other grounds by *Ex parte Seymour*, 946 So.2d 536 (Ala. 2006). Debardelaben was still charged with robbery in the first degree by being armed with a deadly weapon or dangerous instrument. Nor do we find any prejudice to Debardelaben's substantial rights.  Therefore, this claim is meritless.

IV.

In his petition, Debardelaben also alleged that his trial counsel was ineffective for not objecting to the trial court's jury instructions which, he claimed, constructively amended the indictment, and for not adequately objecting to the State's copies of his two prior federal armed-robbery convictions on the ground that the copies were not properly certified in accordance with Rule 44(a)(1), Ala.R.Civ.P. He further alleged in his petition that his appellate counsel was ineffective for not adequately researching and arguing on appeal that the State's copies of his two prior federal armed-robbery convictions were not properly certified in accordance with Rule 44(a)(1), Ala.R.Civ.P.

In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the United States Supreme Court articulated two criteria that must be satisfied to show ineffective assistance of counsel.  A defendant has the burden of showing (1) that his counsel's performance was deficient and (2) that the deficient performance actually prejudiced the defense. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Id*. Furthermore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689. "The standards for determining whether appellate counsel was ineffective are the same as those for determining whether trial counsel was ineffective." *Jones v. State*, 816 So.2d 1067, 1071 (Ala.Crim.App. 2000), overruled on other grounds by *Brown v. State*, 903 So.2d 159 (Ala.Crim.App. 2004).

    As explained in Parts II and III of this memorandum, the copies of Debardelaben's two prior federal armed-robbery convictions were properly certified in accordance with § 12-21-73(9), Ala. Code 1975, and the trial court's jury instruction did not improperly amend the indictment to charge a new or different offense in violation of Rule 13.5, Ala.R.Cr.P. Thus, any objections or arguments on these grounds by trial or appellate counsel would have been baseless.

    "[C]ounsel could not be ineffective for failing to raise a baseless objection." *Bearden v. State*, 825 So.2d 868, 872 (Ala.Crim.App. 2001). Therefore, Debardelaben's claims of ineffective assistance of counsel are meritless.

    ... Because all of Debardelaben's claims are obviously without merit, summary dismissal of his Rule 32 petition was proper.

*Respondents' Exhibit L - Doc. No. 17-15* at 5-13 (footnotes and citations to record omitted).

Debardelaben filed an application for rehearing and the Alabama Court of Criminal Appeals overruled this application on January 13, 2012. *Respondents' Exhibit N - Doc. No. 17-17*. Debardelaben then submitted a petition for writ of certiorari to the Alabama Supreme Court. On February 10, 2012, the Alabama Supreme Court denied the petition for writ of certiorari and issued the certificate of judgment. *Respondents' Exhibit P - Doc. No. 17-19*.

Debardelaben initiated this 28 U.S.C. § 2254 action on February 8, 2012. In this

habeas petition, Debardelaben asserts the following claims for relief:

1.  Trial counsel provided ineffective assistance when he failed to object to the trial court's alleged erroneous constructive amendment to the indictment when it instructed the jury that any representation of a deadly weapon is prima facie evidence of being armed with a deadly weapon.

2.  The trial court lacked jurisdiction to impose a sentence of life without parole as the State failed to properly prove the two prior federal convictions for armed robbery, i.e., the records were not properly authenticated under *Ala. Code* § 12-21-70 or Rule 44(a)(1), Ala.R.Civ.P.

3.  Trial and appellate counsel provided ineffective assistance when they failed to thoroughly investigate the federal documents used by the State to invoke the Habitual Felony Offender Act so as to properly challenge the authentication of these documents under *Ala. Code* § 12-21-70 and Rule 44(a)(1), Ala.R.Civ.P.

4.  The trial court lacked jurisdiction to render judgment or impose sentence due to the constructive amendment of the indictment during its jury instructions by charging the jury on representation as prima facie evidence that he was armed with a deadly weapon.

*Petition for Writ of Habeas Corpus Relief - Doc. No. 1* at 6-8; *Brief in Support of Petition for Writ of Habeas Corpus Relief - Doc. No. 7* at 2-27.

In their answers to the habeas petition, the respondents argue that Debardelaben is entitled to no relief from this court as the state courts properly adjudicated each of his

claims on the merits. *Price v. Vincent*, 538 U.S. 634, 638, 123 S.Ct. 1848, 1852 (2003) ("A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)."); *Williams v. Taylor*, 529 U.S. 362, 402, 120 S.Ct. 1495, 1518 (2000).

Upon review of the § 2254 petition, the answers of the respondents, Debardelaben's responses to the answers, the state court record, opinions issued by the state courts and applicable federal law, this court finds that no evidentiary hearing is required, Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*, and concludes that the petition is due to be denied.

## II. DISCUSSION

The instant petition for federal habeas relief is governed by 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act ["AEDPA"]. "A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)." *Price*, 538 U.S. 634, 638, 123 S.Ct. 1848, 1852; *Williams*, 529 U.S. 362, 402, 120 S.Ct. 1495, 1518. Under the requisite provisions of 28 U.S.C. § 2254(d), with respect to a claim adjudicated on the merits in state court, federal habeas relief from a state court judgment may not be granted unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in
the State court proceeding.

In *Williams*, the Supreme Court held:

Under the "contrary to" clause a federal court may grant the
writ if the state court arrives at a conclusion opposite to that
reached by this Court on a question of law or if the state court
decides a case differently than this Court has on a set of
materially indistinguishable facts.  Under the "unreasonable
application" clause, a federal habeas court may grant the writ
if the state court identifies the correct governing legal principle
from this Court's decisions but unreasonably applies that
principle to the facts of the prisoner's case.

529 U.S. at 412-413, 120 S.Ct. at 1523.

The Court subsequently explained that habeas relief is appropriate when a petitioner

demonstrates "that a decision by a state court is 'contrary to' ... clearly established

[Supreme Court] law if it 'applies a rule that contradicts the governing law set forth in [the

Supreme Court's] cases' or if it 'confronts a set of facts that are materially

indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

result different from [Supreme Court] precedent.' *Williams v. Taylor*, 529 U.S. 362, 405-

406, 120 S.Ct. 1495, 146 L.Ed. 2d 389 (2000)." *Price*, 538 U.S. at 640, 123 S.Ct. at 1853.

Additionally, federal review in a habeas action "is limited to whether the state court's

decision was objectively unreasonable in the light of clearly established federal law.

*Williams*, [529 U.S. at 409], 120 S.Ct. at 1521." *Hawkins v. Alabama*, 318 F.3d 1302,

41

1310 (11th Cir. 2003); *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001), citing *Williams*, *supra* ("[F]ederal habeas relief [is] available under the 'unreasonable application' standard only if the state court's application of clearly established federal law was 'objectively unreasonable.'").  Thus, a federal court is not to decide "the correctness *per se* ... of the state court decision" but only the "objective reasonableness" of such decision.  *Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001).  Moreover, "an ***unreasonable*** application of federal law is different from an ***incorrect*** application of federal law."  *Williams*, 529 U.S. at 410, 120 S.Ct. at 1522 (emphasis in original).  "Clearly established federal law is ***not*** the law of the lower federal courts, including this court.  Instead, in the habeas context, clearly established federal law 'refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state court decision.'  *Williams*, 529 U.S. at 412, 120 S.Ct. at 1523."  *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001) (emphasis in original); *Carey v. Musladin*, 549 U.S. 70, 74 (2006) "'[C]learly established federal law' in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of the [Supreme Court's] decisions as of the time of the relevant state-court decision."); *Berghuis v. Smith*, 559 U.S. 314, 320 (2010) (decision of federal court of appeals does not constitute "clearly established Federal law" for purposes of federal habeas review).

The law is well established that "§ 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning.  529 U.S., at 404–405, 120 S.Ct. 1495.

A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [United States Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts. *Id.,* at 405–406, 120 S.Ct. 1495. The [district] court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case. *Id.,* at 407–408, 120 S.Ct. 1495. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one. *Id.,* at 409–410, 120 S.Ct. 1495. See also *id.,* at 411, 120 S.Ct. 1495 (a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly')." *Bell v. Cone*, 535 U.S. 685, 694 (2002); *Harrington v. Richter*, 562 U.S. 86, --, 131 S.Ct. 770, 786 (quoting *Williams*, 529 U.S. at 410 (emphasis in original) ("For purposes of § 2254(d)(1), 'an ***unreasonable*** application of federal law is different from an ***incorrect*** application of federal law."); *Brown v. Payton*, 544 U.S. 133, 141 (2005) ("A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or

if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result."); *Windom v. Secretary, Dept. of Corrections*, 578 F.3d 1227, 1247 (11th Cir. 2009) ("A state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court cases or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Court's.") (quotation and other marks omitted); *Williams*, 529 U.S. at 411, 120 S.Ct. at 1522 ("Under § 2254(d)(1)'s 'unreasonable application' clause, ... a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."); *Putman*, 268 F.3d at 1241 ("A state court conducts an 'unreasonable application' of clearly established federal law if it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case."); *Payton*, 537 U.S. at 141 ("A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.").

Federal district courts are likewise directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  "[A] state-court factual

determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841, 849 (2010). "[E]ven if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the [state] trial court's ... determination.'" *Id.* (quoting *Rice v. Collins*, 546 U.S. 333, 341-342 (2006)). A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). However, even when the state court addresses a question of law, this court is not authorized "to evaluate [a petitioner's] claim *de novo* rather than through the lens of § 2254(d)." *Price*, 538 U.S. at 639, 123 S.Ct. at 1852. The Supreme Court admonishes that such *de novo* evaluation "exceeds the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)...." 538 U.S. at 636, 123 S.Ct. at 1851.

As is clear from the foregoing, a federal "district court's review ... [of claims decided by the state courts] is greatly circumscribed and highly deferential to the state courts." *Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2007); *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted) ("AEDPA ... imposes a 'highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'"). The AEDPA "modified a federal habeas court's role in

reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell*, 535 U.S. at 694.  Additionally, "[t]he usual 'presumption that state courts know and follow the law' is even stronger in the AEDPA context because § 2254(d)'s 'highly deferential standard for evaluating state-court rulings ... demands that state-court decisions be given the benefit of the doubt.' *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 360, 154 L.Ed.2d 279 (2002) (internal citation omitted)." *Allen v. Secretary, Florida Dept. of Corrections*, 611 F.3d 740, 748 (11th Cir. 2010).  "In order to merit AEDPA deference the state court need not expressly identify Supreme Court precedent, nor make a perfect statement of the applicable rule of law, nor provide a detailed opinion covering each aspect of the petitioner's argument." *Smith v. Secretary, Dept. of Corrections*, 572 F.3d 1327, 1333 (11th Cir. 2009).  "All that is required under § 2254(d)(1) [for deference to the decision of the state court] is an adjudication on the merits, not a full state court opinion." *Parker v. Secretary, Dept. of Corrections*, 331 F.3d 764, 776 (11th Cir. 2003).

> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Ibid.* "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Knowles v.*

*Mirzayance,* 556 U.S. 111, [112], 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

*Harrington*, 562 U.S. at __, 131 S.Ct. at 786.

### A.  Constructive Amendment of the Indictment

Debardelaben asserts that the trial court "constructively amended the indictment in its oral charge to the jury" by providing a jury charge on "'representation' [as a] method of proof" to show that he was armed with a deadly weapon "whereas ... the indictment only alleged [he was] armed with a deadly weapon" during the robberies thereby charging a new or different offense than that set forth in the indictment.  *Petition for Writ of Habeas Corpus Relief - Doc. No. 1* at 8.  Debardelaben argues that this action by the trial court violated both state law and his federal constitutional rights.  Debardelaben raised this same claim and supporting arguments in his Rule 32 petition.  The trial court summarily denied the petition.  On appeal from the denial of the Rule 32 petition, the Alabama Court of Criminal Appeals determined that Debardelaben's claim alleging constructive amendment of the indictment lacked merit.  *Respondents' Exhibit L - Doc. No. 17-15* at 11 ("Contrary to Debardelaben's ... contention, § 13A-8-41(b) [from which the trial court obtained its instruction on representation] does not create a separate offense of first-degree robbery, nor does it create an alternative method of proving the offense of first-degree robbery.  Rather, § 13A-8-41(b) does nothing more than create a rebuttable presumption that a person is considered to be armed 'armed with a deadly weapon or dangerous instrument' for

purposes of § 13A-8-41(a)(1) if that person ... makes 'any verbal or other representation ... that he is then and there so armed.' ... In this case, charging the jury on the rebuttable presumption in § 13A-8-41(b) did not amend the indictment to charge a new or different offense as Debardelaben contends.... Debardelaben was still charged with robbery in the first degree by being armed with a deadly weapon or dangerous instrument.").

"A constructive amendment 'occurs when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment.' *United States v. Keller*, 916 F.2d 628, 634 (11th Cir.1990). 'Customarily, a constructive amendment occurs because the trial court instructs the jury on an expressly different crime than the one alleged in the indictment.' *United States v. Johnson*, 713 F.2d 633, 644 n. 12 (11th Cir.1983)." *United States v. Almond*, 491 Fed.Appx. 993, 994 (11th Cir. 2012). Where an indictment merely charges that an individual is armed or in possession of a firearm, its terms are consistent with either actual, constructive or represented possession of the firearm. *See United States v. Bryant*, 349 F.3d 1093, 1097-1098 (8th Cir. 2003) (Defendant indicted and convicted for being felon in possession of a firearm argued that jury instruction defining both actual and constructive possession as a basis for guilty verdict "constructively amended the indictment from alleging sole, actual possession of the firearm to alleging constructive possession of it." Court rejected this argument because "the indictment stated simply that [the defendant]

possessed a firearm without any qualification as to whether the possession was actual or constructive" and, therefore, the court's instruction did not alter "the essential elements of the offense of being a felon in possession of a firearm, which was the charge that appeared in the indictment."); *United States v. Graham*, 408 Fed.Appx. 976, 980 (6th Cir. 2011) (An indictment which charged the defendant with being a felon in possession of ammunition was not constructively amended by trial evidence or jury instructions which showed actual possession of ammunition as "the language of the indictment does not speak to the manner in which [the defendant] possessed the ammunition....  Because the indictment's terms are consistent with *either* actually possessing the ammunition *or* constructively possessing it, the indictment could not have been constructively amended by trial proceedings establishing" the manner of possession.); *United States v. Wright*, 329 Fed.Appx. 615, 622 (6th Cir. 2009) (where "evidence [offered] could support either an actual or constructive possession" of a firearm, trial court properly instructed the jury on both types of possession); *Felder v. Ohio Adult Parole Authority*, 2009 WL 3763067, 17-18 (N.D. Ohio 2009) (holding that defendant's "novel theory that 'constructive possession' is an alternative concept from possession as opposed to merely a form of possession" lacked merit.); *United States v. Wilcher*, 408 F.Supp.2d 147, 148 (W.D.N.Y. 2006) (indictment charging defendant with knowing possession of a firearm not constructively amended by court's instruction to jury on both actual and constructive possession because "advising the

jury on the law that applies does not constitute an amendment to the indictment.").

The Alabama Court of Criminal Appeals found that the challenged jury instruction did not constructively amend the indictment as it did not charge a crime different from the one charged in the indictment. This court has undertaken a thorough review of the relevant transcripts, the opinion issued by the Alabama Court of Criminal Appeals, and controlling federal law. After such review, the court finds that the state appellate court did not decide Debardelaben's claim "differently than [the Supreme] Court has [in a case based] on a set a of materially indistinguishable facts," nor did the state court apply a rule that contradicts governing federal law. *Williams*, 362 U.S. at 412. Consequently, rejection of these claims by the state courts was not contrary to actual Supreme Court decisions or violative of clearly established federal law. Moreover, under the circumstances of this case, it is clear that the decision of the state court was objectively reasonable and likewise constituted a reasonable determination of the facts in light of the evidence before the court. Thus, Debardelaben is not entitled to federal habeas relief on his claim alleging constructive amendment of the indictment.

To the extent that Debardelaben bases this claim on an alleged violation of state law, he is likewise entitled to no relief, as this court must defer to the state courts in their determination of state law. *Illinois v. Vitale*, 447 U.S. 416 (1980) ("We accept, as we must, the [state court's] identification of the elements [of the offenses] involved here" for

purposes of constitutional analysis of the validity of the convictions.); *Schad v. Arizona*, 501 U.S. 624, 636 (Federal courts "are not free to substitute our own interpretations of state statutes for those of a State's courts."); *Hill v. Kemp*, 833 F.2d 927, 929 (11th Cir. 1987) ("A federal court must follow a state court's decision as to whether a defendant could be convicted legally of a lesser included offense in deciding whether the failure to give a lesser included offense charge violates the Constitution."); *Hopkins v. Reeves*, 524 U.S. 88, 95-98 (1998) (court deferred to state court interpretation of whether a crime is a lesser included offense when determining whether a defendant is constitutionally entitled to an instruction on the lesser included offense).

## B.  Sentence Enhancement

Debardelaben contends that the trial court lacked jurisdiction to impose sentences of life without parole because the State failed to "properly authenticate[]" his prior federal felony convictions "according to Alabama laws that govern[] the proper mode for proving a felony conviction." *Petition for Writ of Habeas Corpus Relief - Doc. No. 1* at 6. Specifically, Debardelaben argues that the State did not meet the requirements of either *Ala. Code* § 12-21-70 or Rule 44(a)(1), Ala.R.Civ.P.

On direct appeal, the Alabama Court of Criminal Appeals determined that Debardelaben's claim challenging authentication of his prior federal convictions under *Ala. Code* § 12-21-70 entitled him to no relief. *Respondents' Exhibit D - Doc. No. 17-7* at 22-

23 ("[T]he record shows that the documents offered to prove Debardelaben's prior federal convictions were certified by the Regional Administrator of the National Archives and Records Administration ... that they were a true and correct copy of the documents [maintained in her possession at the archives located in Denver, Colorado] pertinent to Debardelaben's prior federal convictions for armed robbery.  The certified copies are clearly "other records of the court" under § 13A-5-10.1, Ala. Code 1975, [for purposes of proving his armed robbery convictions].  Thus, the trial court properly admitted the certified copies of these documents as proof of two prior federal felony convictions for the purpose of applying the Habitual Felony Offender Act.").  In affirming the trial court's summary dismissal of Debardelaben's Rule 32 petition, in which Debardelaben argued the State did not meet the requirements of either *Ala. Code* § 12-21-70 or Rule 44(a)(1) Ala.R.Civ.P. in proving the prior federal convictions as these convictions were not properly certified, the Alabama Court of Criminal Appeals determined that the convictions were properly certified in accordance with *Ala. Code* § 12-21-73(9).  *Respondents' Exhibit L - Doc. No. 17-15* at 8 ("[T]he regional administrator [of the National Archives and Records Administration] in Colorado where copies of Debardelaben's convictions were kept [certified the authenticity of the records and] was obviously ... the legal custodian of the records.... Therefore, Debardelaben's claim in this regard is meritless.").

Debardelaben bases his challenges to sentence enhancement on the state courts'

determination that, under state law, the State properly proved his prior federal armed robbery convictions for purposes of enhancing his sentence under the Habitual Felony Offender Act.  A state court's interpretation of its own laws and rules provides no basis for federal habeas relief. *Beverly v. Jones*, 854 F.2d 412, 416 (11th Cir. 1988) (Federal courts are not empowered to "overturn [a state court's] interpretation of [its own] statutory scheme.... '[F]or state court construction of state law is binding on federal courts entertaining petitions for habeas relief.'"); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Pulley v. Harris*, 465 U.S. 37, 42 (1984) (perceived error of state law provides no basis for federal habeas relief); *Estelle v. McGuire*, 502 U.S. 62, 71 (1991) (federal court has no authority to re-examine state court determinations on questions of state law).  "Put another way, '[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.' *McCullough v. Singletary,* 967 F.2d 530, 535 (11th Cir. 1992); *Hunt v. Tucker,* 93 F.3d 735, 737 (11th Cir.1996) (federal courts entertaining petitions for writs of habeas corpus must follow the state court's interpretation of a state law absent a constitutional violation)." *Will v. Secretary for Dept. of Corrections*, 278 Fed. Appx. 902, 908 (11th Cir. 2008); *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) ("It is a fundamental principal that state courts are the

final arbiters of state law, federal habeas courts should not second-guess them....").
Consequently, with respect to Debardelaben's claim that the State failed to prove his prior
federal convictions as required by state law for purposes of sentence enhancement under
the Habitual Felony Offender Act, this claim provides no basis for federal habeas relief as
the Alabama Court of Criminal Appeals decided the claim adversely to Debardelaben.  In
light of this determination, the sentences imposed upon Debardelaben did not violate his
constitutional rights.  Debardelaben is therefore entitled to no relief from this court on his
substantive challenge to the validity of the sentences imposed upon him.

### C.  Claims of Ineffective Assistance of Trial and Appellate Counsel

The Sixth Amendment right to counsel exists to protect the fundamental right to a
fair trial.  The clearly established federal law addressing issues of ineffective assistance of
counsel is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*,
a petitioner must satisfy the requirements of a two-pronged test to prevail on his claims of
ineffective assistance of counsel.  First, the petitioner must establish that the performances
of his attorneys "fell below an objective standard of reasonableness." *Strickland* 466 U.S.
at 688.  Once this threshold test is met, the petitioner must then show that the deficient
performance of his counsel prejudiced his defense. *Id.* at 687.  To establish prejudice, the
petitioner is required to show that there is "a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

> To obtain relief under *Strickland*, [Petitioner] must show (1) counsel's performance was deficient and (2) that deficiency prejudiced him. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.   Counsel's performance is deficient when it falls "below an objective standard of reasonableness," *Chandler v. United States,* 218 F.3d 1305, 1312 (11th Cir. 2000), which means that it is "outside the wide range of professionally competent assistance," *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066.   Further, "omissions are inevitable .... [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler,* 218 F.3d at 1313 (quoting *Burger v. Kemp*, 483 U.S. 776, 794, 107 S.Ct. 3114, 3126, 97 L.Ed.2d 638 (1987)). Courts conduct a highly deferential review of counsel's performance and "'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Id.* at 1314 (alteration in original) (quoting *Strickland*, 466 U.S. at 689-90, 104 S.Ct. at 2065-66).
>
> To establish prejudice, "there must be a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different."   *Lynd [v. Terry]*, 470 F.3d [1308, 1315 (11th Cir. 2006)].   "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2056. "A petitioner's burden of establishing that his lawyer's deficient performance prejudiced his case is also high." *Van Poyck v. Fla. Dep't of Corr.,* 290 F.3d 1318, 1322 (11th Cir. 2002).   A petitioner must "affirmatively prove prejudice."  *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067.

*Payne v. Allen*, 539 F.3d 1297, 1315-1316 (11th Cir. 2008).   "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland* 466 U.S. at 688; *Hinton v. Alabama*, __ U.S. __, __, 134 S.Ct. 1081, 1088 (2014) (same).   The test used to evaluate claims of ineffective assistance of trial counsel applies equally to an analysis of claims of ineffective assistance of appellate counsel. *Jackson v. Dugger*, 931 F.2d 712, 715 (11th Cir. 1991).   Appellate counsel cannot be

deemed ineffective for failing to raise a nonmeritorious claim on appeal. *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000); *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."). Although claims of ineffective assistance of counsel are federal constitutional claims, which federal courts must consider in accordance with the clearly established standards of *Strickland*, when "the validity of the claim that [counsel] failed to assert is clearly a question of state law, ... [this court] must defer to the state's construction of its own law." *Will*, 278 Fed. Appx. at 908 (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (affording deference to state court's decision "to the extent it decide[d] the validity of [the petitioner's] underlying state law claims") (superseded on other grounds).

Debardelaben asserts that trial counsel failed "to object or file a motion for new trial based on the fact that the trial court erroneously constructively amended the indictment" when it provided an oral charge regarding "representation" of being armed as set forth in *Ala. Code* § 13A-8-41(b). *Petition for Writ of Habeas Corpus Relief - Doc. No. 1* at 6. He also contends that trial and appellate counsel did not throughly investigate the documents used by the State to prove his two prior federal felony convictions for armed robbery so as to properly challenge the use of these convictions for sentence enhancement purposes. *Id*.

56

at 6-7.  Debardelaben presented these claims for relief in his Rule 32 petition.  The trial court summarily dismissed the petition.  On appeal from the denial of the Rule 32 petition, the Alabama Court of Criminal Appeals issued a memorandum opinion finding that Debardelaben's claims of ineffective assistance of counsel entitled him to no relief. *Respondents' Exhibit L - Doc. No. 17-15* at 12-13.  In addressing each of Debardelaben's claims of ineffective assistance of counsel, the Alabama Court of Criminal Appeals applied *Strickland v. Washington*, 466 U.S. 668 (1984) and decided these claims adversely to Debardelaben on the merits.  *Id*.  This court must therefore determine whether the rejection of Debardelaben's claims of ineffective assistance of counsel by the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented...."  28 U.S.C. § 2254(d)(1) and (2); *Allen v. Secretary, Florida Dept. of Corrections*, 611 F.3d 740, 745 (11th Cir. 2010); *Hammond v. Hall*, 586 F.3d 1289, 1306 (11th Cir. 2009).

Initially, the Alabama Court of Criminal Appeals determined that Debardelaben's claims of ineffective assistance of trial and appellate counsel related to the use of his prior federal convictions for sentence enhancement entitled him to no relief because "the copies of [his] two prior federal armed-robbery convictions were properly certified in accordance

with [state law]....” *Respondents' Exhibit L - Doc. No. 17-15* at 12-13.  As previously noted, this court must defer to state law determinations made by the Alabama Court of Criminal Appeals in rejecting Debardelaben's claims.  Given the deference afforded the state court's determination, Debardelaben cannot demonstrate that counsel was deficient in failing to challenge the enhancement of his sentence under Alabama law.  The state court's decision on this issue was neither contrary to nor an unreasonable application of *Strickland* and constituted a reasonable determination of the facts in light of the evidence.

With respect to Debardelaben's claim regarding the failure of trial counsel to challenge the jury instruction on representation of a deadly weapon as an improper constructive amendment of the indictment, the Alabama Court of Criminal Appeals determined that this claim lacked merit.  *Respondents' Exhibit L - Doc. No. 17-15* at 12-13. In addressing the claim of ineffective assistance of trial counsel, the appellate court referenced its previous decision that "the trial court's jury instructions did not improperly amend the indictment to charge a new or different offense" and therefore held that "any objections or arguments on [this] ground[] would have been baseless."  *Id*. at 12.  This court has undertaken a thorough review of the trial transcript, the opinion issued by the Alabama Court of Criminal Appeals and controlling federal law.  After such review, it is clear that the state court did not decide Debardelaben's claim of ineffective assistance of counsel "differently than [the Supreme] Court has [in a case based] on a set a of materially

58

indistinguishable facts" nor did the state court apply a rule that contradicts governing federal law. *Williams*, 362 U.S. at 412. Consequently, rejection of this claim by the Alabama Court of Criminal Appeals was not contrary to actual Supreme Court decisions or violative of clearly established federal law. Moreover, under the circumstances of this case, it is clear that the decision of the state appellate court was objectively reasonable and likewise constituted a reasonable determination of the facts in light of the evidence presented to the state courts. Thus, Debardelaben is not entitled to relief from this court on his claim of ineffective assistance of counsel addressed to the alleged constructive amendment of the indictment.

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The petition for habeas corpus relief filed by Gregory Lawon Debardelaben be DENIED.

2.  This case be DISMISSED with prejudice.

It is further

ORDERED that on or before March 11, 2015, the parties may file objections to the Recommendation. Objections must specifically identify the findings in the Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this

Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings in this Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to September 30, 1981).

DONE, this 26th day of February, 2015.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE

60